¶ 83.
PATIENCE DRAKE ROGGENSACK, C.J.
(iconcurring in part, dissenting in part). Although the majority opinion correctly overrules Moran's interpretation of Wis. Stat. § 974.07(6), in which portion of the opinion I concur and join, I dissent from the part of the majority opinion that concludes that Jeffrey Denny is not entitled to DNA testing of evidence collected at the crime scene. I conclude that Denny met the statutory requirements of Wis. Stat. § 974.07(7)(a); and therefore, the circuit court was required to grant Denny's motion for forensic DNA testing. Accordingly, I respectfully concur in part and dissent in part with, and from, the majority opinion.
I. Background
¶ 84. The majority opinion ably sets forth the facts that underlie the dispute before us. I will not repeat them, in full, here. However, I do relate a few facts to turn the reader's attention to my discussion that follows.
¶ 85. On January 26, 1982, Christopher Mohr was found dead in his home by Jonathan Leatherman. Police received a tip that Kent Denny was involved in the crime. Eventually, the police pursued Kent's brother, Jeffrey Denny (Denny), as a suspect. Both *434 Denny and Kent were charged with first-degree homicide and were tried together. On November 15, 1982, the jury found Denny and Kent guilty.
¶ 86. On May 1, 2014, Denny filed a motion for postconviction forensic DNA testing pursuant to Wis. Stat. § 974.07(7)(a). As the majority opinion notes, Denny claimed he was innocent of the murder and sought DNA testing of several objects recovered from the crime scene. These items include: "(1) the large section of a bong pipe; (2) the base of the bong pipe; (3) the hairs collected from the victim's left hand; (4) stray hairs found on various items of clothing from the victim's body; (5) a yellow hand towel; and (6) facial breathing masks found at the scene."[1] In a supplemental memorandum, Denny asked for DNA testing of several additional items: "(1) additional pieces of the bong pipe; (2) blood from the metal chair found by the victim's head; (3) the victim's bloody clothing; (4) the bloody hat found near the victim; (5) the bloody gloves found near the victim; (6) stray hairs found on various items of clothing from the victim's body; (7) the victim's hair; (8) the lighter found under the victim's body; (9) the screens found on the victim's body; and (10) the glass cup found near the victim."[2]
¶ 87. The circuit court denied Denny's motion, but the court of appeals reversed. We granted the State's petition for review.
*435 II. Discussion
A. Standard of Review
¶ 88. This case requires us to interpret and apply Wis. Stat. § 974.07. "Questions of statutory interpretation and application are questions of law that we review independently." State v. Hanson, 2012 WI 4, ¶ 14, 338 Wis. 2d 243, 808 N.W.2d 390.
B. General Wis. Stat. § 974.07 Principles
¶ 89. Denny sought DNA testing pursuant to Wis. Stat. § 974.07(7)(a). Unlike § 974.07(7)(b) in which the circuit court has discretion, paragraph § 974.07(7)(a) requires the circuit court to order DNA testing if the movant satisfies the criteria set forth therein. The difference in the two provisions, as the majority opinion correctly notes, is that a movant is required to maintain his innocence in order to prevail on a motion for DNA testing made pursuant to paragraph (a).
¶ 90. Wisconsin Stat. § 974.07(7)(a) has four requirements a movant must meet in order to be successful. First, as mentioned above, the defendant must maintain "that he or she is innocent of the offense." Wis. Stat. § 947.07(7)(a)l.
¶ 91. Second, it must be "reasonably probable that the movant would not have been . . . convicted . . . if exculpatory deoxyribonucleic acid testing results had been available before the prosecution, [or] conviction, . . . ." Wis. Stat. § 947.07(7)(a)2.
¶ 92. "Reasonably probable" is an outcome determinative test akin to the test we apply when determining if newly discovered evidence warrants a new trial. *436 Similar to the test we apply in that context, "we must determine whether there is a reasonable probability that a jury, looking at all the relevant evidence in regard to whether the defendant did or did not commit the crime, would have reasonable doubt as to the defendant's guilt. This examination requires an assessment of all the evidence to determine what effect, if any, the newly discovered evidence would be reasonably probable to have on a jury's verdict at a new trial." State v. Armstrong, 2005 WI 119, ¶ 167, 283 Wis. 2d 639, 700 N.W.2d 98 (Roggensack, J., dissenting) (internal citation marks omitted). Moreover, under this prong, the plain language of Wis. Stat. 947.07(7)(a)2. requires that we are to assume, as we consider Denny's motion, that all of the evidence he seeks to have tested will be exculpatory because the test he must meet, which is set out in subdivision (a)2., concerns "exculpatory deoxyribonucleic acid testing results."[3] Stated otherwise, if we did not assume that the DNA testing results would be exculpatory, we could not decide whether it would be reasonably probable that Denny would not have been convicted if the DNA testing results had been available at trial.
¶ 93. Third, pursuant to Wis. Stat. § 974.07(7)(a)3., the movant must meet the criteria set forth in § 974.07(2)(a)-(c). Section 974.07(2)(a) provides that "[t]he evidence [must be] relevant to the investigation or prosecution that resulted in the conviction." The evidence must be in the possession of a government agency. Wis. Stat. § 974.07(2)(b). Finally, the evidence was not "previously [] subjected to forensic deoxyribonucleic acid testing or, if the evidence has *437 previously been tested, it may now be subjected to another test using a scientific technique that was not available or was not utilized at the time of the previous testing and that provides a reasonable likelihood of more accurate and probative results." Wis. Stat. § 974.07(2)(c). If a movant meets each of these criteria, then he has satisfied the third statutory requirement necessary to obtain DNA testing.
¶ 94. Fourth, "The chain of custody of the evidence to be tested [must] establish [] that the evidence has not been tampered with, replaced, or altered in any material respect or, if the chain of custody does not establish the integrity of the evidence, the testing itself can establish the integrity of the evidence." Wis. Stat. § 974.07(7)(a)4. This requirement ensures the integrity of the evidence the defendant seeks to test.
¶ 95. As discussed above, Wis. Stat. § 974.07(7)(a) provides that a movant who meets each of these statutory criteria is entitled to DNA testing of evidence relevant to the crime of which he was convicted.
C. Denny's Motion for DNA Testing
¶ 96. In the present case, we must decide whether Denny satisfied the criteria set forth in Wis. Stat. § 974.07(7)(a). Contrary to the majority, I would conclude that Denny has met the statutory requirements, and therefore his motion for postconviction DNA testing must be granted.
f 97. Without discussion of the remaining statutory requirements,[4] the majority concludes that Denny has not fulfilled the second statutory criteria. In es *438 sence, the majority holds that it is not "reasonably probable that [Denny] would not have been prosecuted. . . [or] convicted of his crime if exculpatory [DNA] testing results had been available."[5]
¶ 98. Consistent with the circuit court's analysis, the majority reasons that the State did not present this to the jury as a single-perpetrator crime. The majority's analysis can be summed up simply: the State theorized that other individuals were involved in the crime, and some witnesses testified that Denny was minimally involved, so a lack of Denny's DNA on the objects retrieved from the scene of the crime is not exculpatory.
¶ 99. However, the majority's conclusion is misplaced for two interrelated reasons. First, it understates the importance of the manner in which the State actually tried the case. Specifically, the State presented witness after witness that testified Denny was at the scene of the crime, including specific details about Denny's active participation in physically attacking Mohr. Second, if Denny's DNA is not found on any of the objects for which DNA testing is sought, the majority's analysis undervalues the potential of this lack of DNA evidence. This is so because it would *439 suggest that testimony placing Denny at the scene of the crime and physically attacking Mohr was not reliable.
¶ 100. For example, Trent Denny, Denny's brother, testified that Denny admitted he had stabbed Mohr. According to Trent, Mohr "was coming after [Denny] while [Denny] was stabbing him." Another witness, Lori Ann Jastor Commons, related that Kent stated Denny had stabbed Mohr. Steven Hansen testified at trial that Denny had kicked Mohr. Patricia Robran testified that Denny had informed her that "Kent stabbed [Mohr] first and he handed [Denny] the knife and Kent told him to continue what he was doing until he got back, so [Denny] did, and he didn't remember if he did it five or ten or fifteen times." An inmate at Ozaukee County Jail testified that Denny confessed he "hit [Mohr] over the head with a bong and kicked him a couple times." Tammy Whitaker testified that Denny told her two versions of how the murder occurred, both of which involved Denny's active participation in the murder. Another witness testified that Denny stated he had a scratch on his leg where Mohr had scratched him during their struggle.
¶ 101. Consequently, the State relied on the testimony of numerous witnesses to prove Denny's direct involvement in the murder by physically attacking Mohr. DNA testing of the evidence from the scene of the crime may well impact whether this testimony about Denny's involvement was true. Stated otherwise, if none of Denny's DNA is on any of the articles for which DNA testing is requested, the jury could have a reasonable doubt whether Denny committed the crime.
¶ 102. Additionally, this is not a case in which a dearth of material recovered from the scene of the *440 crime would make DNA testing futile; rather, the police obtained numerous articles that likely contain DNA. The sheer number of articles to be tested makes Denny's point all the more compelling. If he was actively involved in the murder by physically attacking Mohr, one or more of the objects should contain traces of his DNA. And, as discussed above, Wis. Stat. § 974.07(7)(a)2. requires us to assume that there will be no trace of Denny's DNA because we assume the evidence is exculpatory as we consider whether to grant his postconviction motion.
¶ 103. A brief description of what the police recovered from the scene of the crime is helpful to understand the import of this evidence. When police arrived at the scene, a bong pipe was shattered around Mohr's body. An officer that was at the crime scene testified that there were large amounts of blood on pieces of the bong pipe. Denny seeks testing of this pipe and its broken pieces to determine if it contains DNA. The bong pipe is particularly relevant to Denny's claim of innocence because the State presented testimony at trial that Denny struck Mohr in the head with the bong pipe. A lack of Denny's DNA on the bong pipe could suggest that Denny had not touched it, and directly undermine this trial testimony.
¶ 104. Moreover, Denny seeks testing of several hairs that an officer found in Mohr's left hand. It requires little speculation to surmise that these hairs likely belong to an individual that was actively involved in the crime. And the State presented testimony at trial that Denny was one of these individuals. If the hairs do not belong to Denny, it could lead a juror to doubt testimony about his active involvement.
¶ 105. The same analysis applies to the numerous strands of hair stuck to Mohr's body by dried blood. *441 The State's theory of the crime involved a struggle between Denny and Mohr. And, several witnesses testified that Denny stabbed Mohr. A juror could justifiably question the credibility of this testimony if none of the hairs found belonged to Denny.
¶ 106. Accordingly, the articles that Denny seeks to have tested for DNA are not only numerous, but also highly relevant to the testimony the State presented against Denny at trial. Evidence that could show Denny was not at the scene of the crime could affect the credibility of the State's witnesses.
¶ 107. Of course, this is not to imply that the testimony against Denny at trial was not substantial. Yet, if the large quantity of evidence found at the scene is presumed to be exculpatory, i.e. none of it contains Denny's DNA, then the testimony proffered against Denny at his trial would be significantly undercut. And, this is where the majority errs. It does not adequately view the evidence in light of the State's trial presentation of the case.
¶ 108. If the DNA testing shows none of Denny's DNA, given the State's trial presentation of the case, it is reasonably probable that one or more jurors would have had reasonable doubt as to Denny's involvement in the crime. Stated more fully, one juror could have concluded that the State's theory that Denny actively participated in the murder of Mohr was untenable given the lack of Denny's DNA at the scene of the crime, which could suggest that Denny was not there.
¶ 109. Accordingly, I conclude that Denny is entitled to forensic DNA testing in the present case. Finally, I note that Denny is not necessarily entitled to a new trial regardless of the results of the DNA tests. *442 Supreme court review is limited to whether Denny met the statutory criteria to entitle him to DNA testing.[6]
III. Conclusion
¶ 110. In light of the foregoing, although the majority opinion correctly overrules Moran's interpretation of Wis. Stat. § 974.07(6), in which decision I concur, I dissent from its conclusion affirming the circuit court's refusal to order forensic DNA testing. Accordingly, I would affirm the court of appeals, although on a different basis, and I respectfully concur in part and dissent in part from the majority opinion.

 Denny's Supp. Mot. for Postconviction DNA testing (August 4, 2014).

 Exculpatory evidence is defined as "Evidence tending to establish a criminal defendant's innocence." Exculpatory Evidence, Black's Law Dictionary 637 (9th ed. 2009).

 There is no dispute that Denny has satisfied the other three statutory requirements. First, as required by § 974.07(7)(a)l., Denny has consistently maintained his inno *438 cence. See Denny's motion for postconviction DNA testing (May 1, 2013). Likewise, Denny has satisfied the criteria set forth in the third factor: the DNA evidence is relevant; in the possession of the Ozaukee County Clerk of Courts office, which is a government entity; and neither party contends that the evidence has previously been tested. Similarly, Denny satisfied the fourth criteria as the State does not contend that the evidence has been tampered with or that the chain of custody has been broken, and nothing in the record suggests otherwise.

 Majority op., ¶ 76.

 Likewise, I do not address whether this testing should be at Denny's or the public's expense as that is a matter reserved for the circuit court.